IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BARONS FINANCIAL SERVICES (UK) LIMITED, | § § § § | |
| Plaintiff, | § § | |
| V. | § § | CIVIL ACTION NO. H-07-1017 |
| PREDATOR TECHNOLOGIES, LLC, | § § § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

This is a breach of contract suit. The plaintiff, Barons Financial Services (UK) Limited, entered into an agreement with Predator Technologies, LLC, a Texas company. The parties signed an engagement letter on December 1, 2006. Under the agreement, Barons, an investment banking firm, was to help Predator find investors who would provide capital or financing. The agreement specified a monthly retainer fee and a "success" fee dependent on what financing or capital investment Baron obtained.

Both Barons and Predator quickly became unhappy. Barons complained that Predator did not pay the monthly retainer and reimburse expenses. Predator complained that Barons did not perform the quality and quantity of services due. Predator terminated the contract by letter dated February 17, 2007. Barons sued Predator on March 27, 2007, alleging breach of contract and seeking payment of the unpaid monthly retainer amounts for December, January, and half of February, the expenses, and attorneys' fees. Predator counterclaimed

for breach of contract.

Barons has filed a motion for partial summary judgment. In the motion, Barons argues that because the parties' agreement required payment of the monthly retainer and reimbursement of expenses and did not require a certain level of work or "deliverables" by a certain deadline, Barons is entitled to summary judgment on its breach of contract claim as a matter of law. Predator has responded, arguing that the only authority Barons cites is not a sufficient basis for the relief it seeks.

**I.    Background**

The parties' engagement letter, dated November 28, 2006 and signed December 1, 2006, required Barons to "act as advisor" for Predator to "facilitate" the "potential placement to an investor or investors and/or a finance provider or providers of debt, convertible debt, equity and/or quasi equity for Predator" by allowing an "investor or investors and/or a finance provider or providers to obtain information about Predator in order to confirm their interest in investing in and/or providing financing to Predator," and to "facilitate negotiations between [Predator] and the potential investor(s)/finance provider(s)." (Docket Entry No. 15, Ex. B). Barons would then "project manage" and help Predator negotiate and complete each investment. The work Barons was to perform included talking to Predator's management about the company's strategy and industry; assisting in the preparation of "detailed, focused and clear business plans, Information Memoranda and presentations to be used as a basis for discussion with selected investors/finance providers; analyzing Predator's "potential fundraising options"; and a number of other services relating to finding and obtaining

investments in Predator. (*Id.*, Ex. B). The engagement letter provided that Barons would receive a total monthly retainer fee of £15,000, of which £10,000 would be paid monthly and the remaining £5,000 per month would be "aggregated on a monthly basis, and will be payable in arrears upon completion" of an investment transaction. (*Id.*, Ex. B). A success fee would be payable if a transaction was completed. Whether or not a transaction took place, Predators was to "promptly reimburse [Barons] for all reasonable out of pocket expenses properly incurred by us in the performance of our services in relation to the transaction." (*Id.*, Ex. B).

The engagement letter provided that either party could terminate the agreement. Predator had the right to terminate "at any time by written notice to that effect"; Barons had the right to terminate upon 30 days written notice to that effect. (Docket Entry No. 15, Ex. B). The termination section of the engagement letter stated:

> Termination by either party shall:
>
> I) Be without liability or continuing obligation to either of us save (subject to ii and iii below) for the rights and obligations which have already accrued to the parties hereunder . . . prior to the termination;
>
> ii) Cause our fees and expenses to be paid as in a) and b) below, unless our engagement has been terminated by you by reason of our negligence or illegal activity or wilful default or a breach of terms of this letter or by us without cause ("cause" for these purposes being breach by you of the terms of this letter or the undertaking of any illegal or [sic] activities):
>
>> a) The retainer fee and expenses will be paid up to the date of written notice of termination; . . .

(Docket Entry No. 15, Ex. B). The engagement letter stated that it was governed by English law and the parties agreed that for "the benefit of Predator, any dispute arising out of or in connection with this letter shall be subject to the exclusive jurisdiction of the English courts to whose jurisdiction we irrevocably submit." (*Id.*, Ex. B).

The summary judgment evidence includes a copy of the deposition of James Cargas, general counsel and corporate secretary for Predator. In his deposition, he described Predator's dissatisfaction with Barons's performance. The deficiencies Predator found in Baron's performance included a lack of involvement or work by Michael Oaten, the person who was supposed to be in charge of the engagement; sending a young associate to Houston for three days to review Predator's books and collect documents (during which that associate spent a day shopping); and delivering only one piece of work, a business plan, which was "essentially cut and pasted" from Predator's previous business plan and contained many spelling and grammatical errors. (Docket Entry No. 15, Ex. A, pp. 28–30). Cargas also acknowledged that in January 2007, Predator was experiencing cash-flow problems resulting from the failure of an expected investment to materialize. Predator was unable to pay the December and January monthly retainers. According to Cargas, Predator told Barons in January 2007 that it was dissatisfied with the business plan Barons had provided and with paying for the Baron's associate's "shopping trip to the United States." (*Id.*, Ex. A, p. 37). According to Cargas, during this same period, Barons stated that they were going to stop working until they got a payment. (*Id.*, Ex. A, p. 29). In the February 17, 2007 termination letter from Predator to Barons, also submitted by Barons as part of the summary judgment

evidence, Predator stated that it was terminating Barons "for cause effective immediately." (*Id.*, Ex. D). The reasons stated were a lack of work during December and January; lack of progress on "any deliverables except one," which meant that the April 1, 2007 goal date set in the agreement could not be met; and a business plan that was "nothing more than a rearranged copy of our own prior business plan." (*Id.*, Ex. D). The letter also offered to pay a pro rata share of the expenses for the associate's visit to Houston, deducting the time he spent shopping. (*Id.*, Ex. D). This lawsuit, and the counterclaim, followed.

Barons asks this court to grant summary judgment on its breach of contract claim. Barons takes the position that under the agreement, it is entitled to all monthly retainers and expenses between December 1, 2006 and February 17, 2007, because the agreement did not tie Predator's obligation to make monthly retainer payments to the amount of work done by Barons, what materials were delivered by Barons, or when the materials were delivered. Barons asserts that even assuming Predator's allegations in the counterclaim as to the performance deficiencies were meritorious, they are "wholly irrelevant to the issue of whether the monthly retainers and expenses are owed." (Docket Entry No. 15, p. 5). Barons relies on the language of the engagement letter and an opinion from the Bankruptcy Court of the Northern District of Texas, *In re Mirant Corp.*, 354 B.R. 113 (Bankr. N.D. Tex. 2006).

## II.     The Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). The movant bears the burden of identifying those portions of the record it believes demonstrate

the absence of a genuine issue of material fact." *Lincoln General Ins. Co. v. Reyna*, 401 F.3d (5th Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element or claim. *Celotex*, 477 U.S. at 330. The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the nonmovant's case. *Bourdeaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). "An issue is material if its resolution could affect the outcome of the action." *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 535 (5th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)). If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response. *Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim. *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 305 (5th Cir. 2004). This burden is not satisfied by "some metaphysical doubt as to the material facts," "conclusory allegations,"

"unsubstantiated assertions," or "only a scintilla of evidence." *Young v. ExxonMobil Corp.*, 155 Fed. Appx. 798, 800 (5th Cir. 2005).

In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Anderson,* 477 U.S. at 255; *Young*, 155 Fed. Appx. at 800. "Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  *Beard v. Banks*, 126 S.Ct. 2572, 2578 (2006) (quoting *Celotex*, 477 U.S. at 322).

### III.    Analysis

In the brief in support of its summary judgment motion, Barons quotes – in part – the termination provision of the parties' agreement.  According to Barons, the Agreement stated that "[t]ermination by either party shall: . . . ii) Cause [Plaintiff's] fees and expenses to be paid . . . up to the date of written notice of termination." (Docket Entry No. 15 at 4). Barons argues that it is entitled to all monthly retainers and expenses incurred between December 1, 2006 and February 17, 2007.  Barons has, however, not quoted the relevant provision in full.  The termination provision of the Agreement states that "Termination by either party shall: . . . ii) Cause [Plaintiff's] fees and expenses to be paid . . . *unless* our engagement has been terminated by you by reason of our negligence or illegal activity or wilful default or a breach of terms of this letter . . . ." (*Id.*, Ex. B) (emphasis added).  Predator has counterclaimed, alleging that it terminated the engagement because Barons breached.  The

summary judgment evidence Barons submitted includes deposition testimony from Predator's general counsel explaining Predator's basis for believing that Barons had been negligent and had wilfully defaulted in performing the engagement.  Contrary to Barons's argument in its motion, the alleged deficiencies in Barons's performance were not limited to a failure to provide time sheets or to perform obligations not specified in the engagement letter.  Rather, Predator alleged, and the summary judgment record shows evidence of, Barons's failure to perform the work required under the parties' agreement, including by failing to have the primary person responsible for the engagement sufficiently involved, doing poor work on the business plan that Barons did submit, and doing so little work in December and January as to endanger the April 2007 goal date.

Although the engagement letter entitled Barons to reimbursement for expenses, those expenses had to be "reasonable" and "properly incurred. . . in the performance of . . . services." (Docket Entry No. 15, Ex. B, p. 9).  Predator has alleged, and the summary judgment record provides evidence, that at least some of the expenses charged were neither reasonable nor properly incurred in the performance of Barons's services under the engagement.

Although the engagement letter specified that English law applied and that English courts would be the "exclusive forum" for resolving disputes, the parties appear to have waived at least the forum-selection provision.  Neither party cites English law in the briefs.  In American jurisdictions that adopt the RESTATEMENT SECOND OF CONTRACTS – including Texas – Barons's motion would not be granted.  Under the RESTATEMENT, the obligation of

one party to perform the contract may be excused if the other party has materially breached. *Mustang Pipeline Co. v. Driver Pipeline Co.,* 134 S.W.3d 195, 196 (Tex.2004) (per curiam); *Hudson v. Wakefield,* 645 S.W.2d 427, 430 (Tex.1983). A breach is material if the injured party does not receive the substantial benefit of the bargain. *See Hernandez v. Gulf Group Lloyds,* 875 S.W.2d 691, 693 (Tex.1994); *Lazy M Ranch Ltd. v. TXI Operations,* 978 S.W.2d 678, 681–82 (Tex.App.—Austin 1998, pet denied). The RESTATEMENT identifies five circumstances significant to determining whether a party's failure to perform is material: (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected; (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived; (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture; (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of the circumstances including any reasonable assurances; and (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing. RESTATEMENT (SECOND) OF CONTRACTS § 241 (1981).

Under the parties' agreement, Barons is entitled to be paid its monthly retainer and expenses unless the agreement was terminated for cause. The ability of Barons to recover the unpaid retainers and the expenses under the engagement letter depends on disputed issues material to determining whether Barons performed as promised and, if not, if its failure to perform was excused by Predator's material prior breach in the form of nonpayment. Similarly, there appear to be fact issues as to whether Predator's failure to pay was excused

by Baron's material prior breach in the form of deficient performance. Finally, there are fact issues as to whether the expenses Barons claims were reasonable.

The Bankruptcy Court case Barons cites does not support a different result. Not only is the quoted language dicta, but the issue was unlike the question before this court. In *Mirant*, the court reviewed an application for fee approval submitted by a financial advisor retained by the debtor under section 330 of the Bankruptcy Code. 354 B.R. 113. The court stated that because the advisor had achieved "success" as that was defined by the parties' agreement, the advisor was entitled to the negotiated success fee under the contract regardless of the amount of work expended. *Id.* at 125–26. The present case involves Barons's entitlement to its retainer and expenses under an agreement that was terminated for cause. *Mirant* is not applicable.

The parties' agreement states that Barons is entitled to its retainer and expenses up to the date of termination, unless the termination was for cause. The record shows disputed issues material to determining whether Predator breached by failing to pay Barons, given that the termination was for cause. The record also shows disputed issues material to determining whether Predator's failure to pay is excused by any prior material breach by Barons and whether Barons's expenses were reasonable and related to the services it was to provide. These fact issues preclude summary judgment.

## IV.    Conclusion

Barons's motion for partial summary judgment is denied.

SIGNED on January 2, 2008, at Houston, Texas.

_____

Lee H. Rosenthal
United States District Judge